UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  Case No. 12-49818

DALAL JOHN MICHEL,  Chapter 7
and
NIRAN SALIM MICHEL,  Judge Thomas J. Tucker

              Debtors.
_____/

**OPINION REGARDING THE UNITED STATES TRUSTEE'S MOTION
FOR REFUND OF DEBTOR COUNSEL'S ATTORNEY FEE**

This case came before the Court for a hearing on the motion filed by the United States Trustee, entitled "Motion for an Order Requiring Debtors' Attorneys to Return Payment to Debtor Pursuant to § 329" (Docket # 20, the "Motion"). For the reasons stated in this opinion, the Motion will be granted.

**I. Background and facts**

The material facts regarding the Motion are not in dispute.

    **A. The pre-petition contract for legal services between Debtors and their attorney**

Pre-petition, Debtors entered into a contract with attorney Daniel J. Finwall ("Finwall"), in which Finwall agreed to represent Debtors in filing for relief under Chapter 7 of the Bankruptcy Code for a "**non-refundable** minimum engagement fee" of $900.00 (the "Fee Agreement").[1]

        **1. Services covered by the minimum engagement fee**

The Fee Agreement provides that

---

[1] *See* Fee Agreement (Ex. 1 of "Reply Brief in Support of the United States Trustee's Motion for Disgorgement" (Docket # 24)) at 1 (bold and underline in original).

[t]he minimum engagement fee covers the following services:

    1.    Counseling you in preparing

        1.a    The Chapter 7 Petition
        1.b    The Statement of Financial Affairs
        1.c    The Schedule of Assets and Liabilities
        1.d    The Schedule of Current Income and Expenditures
        1.e    Statement of Intentions with respect to the retention or surrender of your property that secures any of your consumer debts and related matters.
        1.f    the Waiver-of-Discharge Hearing and any other papers, pleadings or reports the court may require.
    2.    Counseling you with respect to the exemption of particular items or types of property.
    3.    Attending the § 341 Meeting of Creditors.[2]

**2.  What is <u>not</u> covered by the minimum engagement fee**

The Fee Agreement also lists what is <u>not</u> covered by the minimum engagement fee, including the $306 bankruptcy filing fee, "credit counseling fees, court filing fees, other fees assessed by the court, [and] any other reimbursable fees incurred by the law firm that are not included in the [covered] services enumerated[.]"[3] The Fee Agreement specifies a flat fee for some additional services that may be required due to certain possible occurrences in the bankruptcy case, but which are not covered by the minimum engagement fee: $2,500.00 additional fee if the case is voluntarily or involuntarily converted from Chapter 7 to Chapter 13, plus any additional costs; $74.00 to add creditors post-petition, plus amendment fees; $100.00, if Debtors fail "to provide the office with property documents including but not limited to <u>recorded</u> copies of mortgages and deeds three weeks prior to the 341 Meeting of Creditors;" $250.00 for

---

[2] *Id.*

[3] *Id.*

reaffirmation agreements regarding secured collateral or $400 if a court appearance is necessary; and 40% of any pre-filing garnished funds recovered. The Fee Agreement provides that any other services not covered by the minimum engagement fee are to be billed "at the hourly rate of $200.00 plus any related reimbursable expenses."[4] Those additional services include, but are not limited to: (1) defending actions seeking denial of the Debtors' discharge; (2) defending non-dischargeability actions; (3) prosecuting any complaints by Debtors seeking a determination regarding the dischargeability of a debt; (4) defending any preference or fraudulent transfer actions filed by the Chapter 7 Trustee; (5) opposing any objections to Debtors' claims of exemption; and (6) appealing any orders or judgments entered against Debtors.[5]

### 3. Payment terms

The Fee Agreement provides that "[i]t is a condition precedent to this agreement that all fees are paid in advance before the filing of the petition unless otherwise agreed upon between this office and client."[6] Under the Fee Agreement, fees for any services not included in the $900 flat fee and that are billed at the $200.00 per hour rate, are to be paid "on a monthly basis."[7]

### B. Debtors' bankruptcy filing

On April 18, 2012, Debtors, through Finwall, filed a voluntary petition for relief under Chapter 7, commencing this case, along with, among other things, Schedules A-J, a Statement of

---

[4] *Id.* at 1-2.

[5] *Id.*

[6] *Id.* at 1.

[7] *Id.* at 2.

Financial Affairs ("SOFA"), and a "Statement of Attorney for Debtor(s) Pursuant to F.R.Bankr.P. 2016(b)" (the "2016(b) Statement").[8]

The 2016(b) Statement states that "[t]he compensation paid or agreed to be paid by the Debtor(s) to [Finwall]," is a "flat fee" of $900.00 "[f]or legal services rendered in contemplation of and in connection with this case, exclusive of the filing fee paid;" that $450.00 of the flat fee was received prior to the filing of the 2016(b) Statement; and that $450.00 of the flat fee is "due and payable."[9] The SOFA indicates that Debtors paid $450.00 to Finwall on April 10, 2012, prior to filing the bankruptcy petition.[10] Debtors did not list Finwall as a creditor on Schedule F, and Finwall has not filed a proof of claim in this case.

On May 24, 2012, the § 341 meeting of creditors was held and concluded and Debtors paid the $306.00 bankruptcy filing fee. The next day, on May 25, 2012, Debtors paid Finwall the $450.00 balance owing on his $900.00 flat fee.[11]

On June 7, 2012, Finwall filed a new 2016(b) Statement (the "Amended 2016(b) Statement").[12] This Statement says that "[t]he compensation paid or agreed to be paid by the Debtor(s) to [Finwall]," is a "flat fee" of $900.00 "[f]or legal services rendered in contemplation

---

[8] Docket # 1.

[9] *Id.* at pdf. p. 38.

[10] *Id.* at pdf. p. 32 at ¶ 9 (Payments related to debt counseling or bankruptcy).

[11] Ex. 2 of Finwall's "Objection to United States Trustee's Motion to [Disgorge]" (Docket # 21) ("Attorney for Debtors Response Brief") at 1, 8.

[12] Docket # 19.

4

of and in connection with this case, exclusive of the filing fee paid;" that $900.00 was received prior to the filing of the Amended 2016(b) Statement; and that $0.00 is due and payable.[13]

### C. The United States Trustee's motion for disgorgement

After Finwall filed the Amended 2016(b) Statement, the United States Trustee ("UST") filed the Motion, seeking an order requiring Finwall to disgorge the entire $900.00 flat fee he received for representing Debtors in this bankruptcy case.[14] The UST later modified the relief requested in the Motion to seek disgorgement of only the $450.00 Debtors paid to Finwall post-petition. The UST makes two arguments in support of the Motion.

First, relying primarily on *Rittenhouse v. Eisen*, 404 F.3d 395 (6th Cir. 2005), the UST argues that attorney fees incurred, but not paid, before the filing of a bankruptcy petition, and not subject to any exception to discharge under 11 U.S.C. § 523, are fully dischargeable under 11 U.S.C. § 727(b).[15] And, relying on *In re Waldo*, 417 B.R. 854 (Bankr. E.D. Tenn. 2009), *In re Lawson*, 437 B.R. 609 (Bank. E.D. Tenn. 2010), and *In re Mansfield*, 394 B.R. 783 (Bankr. E.D. Pa. 2008), the UST argues that debts arising from "[p]re-petition agreements to pay a flat fee in post-petition installments are dischargeable."[16] Therefore, according to the UST, any attempt to collect such fees post-petition would violate either the automatic stay of 11 U.S.C. § 362(a) or the discharge injunction of 11 U.S.C. § 524(a) (depending on whether the collection effort took

---

[13] *Id.*

[14] Mot. (Docket # 20) at 3-4.

[15] Mot. at 3 ¶ 13; UST's Br. in Supp. of Mot. at 2-4. (Docket # 20).

[16] Mot. at 3 ¶ 14; UST's Br. in Supp. of Mot. at 5. (Docket # 20).

5

place before or after the debtor received a discharge).[17] The UST argues further that the $450.00 portion of the $900.00 flat fee, which Debtors still owed on the filing date, and which Debtors paid post-petition, was a pre-petition debt arising on the date the Fee Agreement between Debtors and Finwall was executed, and was not subject to any dischargeability exception.[18] As such, according to the UST, this debt to Finwall should have been scheduled, and was subject to being discharged, and Finwall's collection of this debt violated the automatic stay.[19]

The UST's second argument, which is related to the first, is that the $450.00 Debtors paid to Finwall post-petition "exceeded the value of services rendered" under 11 U.S.C. § 329(b) because Finwall failed to disclose to Debtors any of the following: (1) that the $450.00 Debtors owed to Finwall was a dischargeable pre-petition debt; (2) that as a holder of a pre-petition claim against Debtors, Finwall had a conflict of interest; and (3) that Finwall's collection of such debt would violate the automatic stay or the discharge injunction.[20] Another reason the $450.00 charge to be paid post-petition was unreasonable, according to the UST, is because most of the services an attorney performs in the usual Chapter 7 case must be performed pre-petition, and there is usually very limited work to do post-petition.[21]

---

[17] UST's Br. in Supp. of Mot. (Docket # 20) at 7-8.

[18] The UST notes that "Section 523 has no exception for pre-petition attorney fees owed to the attorney for the debtor." UST's Br. in Supp. of Mot. (Docket # 20) at 3.

[19] Debtors paid Finwall $450.00 post-petition on May 25, 2012. Debtors received a discharge on July 24, 2012 (Docket # 28). Therefore, it was the automatic stay rather than the discharge injunction which allegedly was violated.

[20] UST's Br. in Support of Mot. (Docket # 20) at 3-4 & n.1.

[21] *Id.* at 5-6.

6

For these reasons, the UST argues that under 11 U.S.C. § 329(b), the Court should order Finwall to disgorge the $450.00 post-petition payment, or should cancel the Fee Agreement.[22]

**D. Finwall's position**

Finwall counters that the *Rittenhouse* case is not directly on point, because it dealt only with *pre-petition* debt; namely debt which undisputedly arose pre-petition based on an attorney's performance of legal services exclusively in the pre-petition period. By contrast, Finwall argues, Debtors' debt to him, and thus his claim against Debtors for $450.00 of the $900.00 flat fee, arose from his post-petition performance of legal services for Debtors, and thus was a non-dischargeable *post-petition* debt.[23] Finwall notes that *Rittenhouse* recognized that, unlike attorney fees which were incurred pre-petition and which are dischargeable, attorney fees incurred post-petition are nondischargeable.[24] Relying on *Gordon v. Hines* (*In re Hines*), 147 F.3d 1185 (9th Cir. 1998), and *In re McNickle*, 274 B.R. 477 (Bankr. S.D. Ohio 2002), Finwall argues that his claim for the additional $450.00 did not arise until he actually performed the services post-petition, even though the payment of the additional $450.00 was according to the terms of the Fee Agreement, which was entered into pre-petition.[25] This is because, according to

---

[22] *See* Mot. at 4 (seeking disgorgement of entire $900.00 fee, which request was later modified); *see also* UST's Br. in Supp. of Mot. at 3 (requesting that the Court "order the attorneys to disgorge any fees collected post-petition and/or cancel the [Fee Agreement] as set forth in 11 U.S.C. § 329"), 7-8.

[23] "Attorney for Debtors Response Brief" (Docket # 21) at 3-4.

[24] *Id.* (citing *Rittenhouse*, 404 F.3d at 397 ("Moreover, § 329 covers . . . post-petition attorney fees, which are not dischargeable.")).

[25] *Id.* at 3-5.

Finwall, Debtors had no obligation to pay him the additional $450.00 until he actually performed the post-petition services.[26]

Finwall points to nothing in his written fee agreement with the Debtors that supports this assertion. But he argues that under Rule 1.16(d) of the Michigan Rules of Professional Conduct, attorneys must refund any fees paid but not earned. According to Finwall, this supports his position that Debtors had no obligation to pay him any fee post-petition unless he first performed the post-petition services he had agreed to perform.

Finwall alleges that he and the Debtors *orally* agreed that $450.00 of the $900.00 flat fee could be paid by Debtors after the filing of the bankruptcy petition. And, Finwall asserts, "the Debtors and Mr. Finwall had an *orally expressed agreement* that the $450.00 payment was exclusively for pre-petition services. The balance of $450.00 (which was paid the day after the 341 Meeting) only became due subsequent to Mr. Finwall's performance of post-petition services, which totaled approximately 2.91 hours, including preparation and representation at the 341 Meeting."[27]

It follows, according to Finwall, that because Debtors' debt to him for the additional $450.00 arose post-petition, it was not dischargeable, and Finwall's collecting that debt did not violate the automatic stay.[28]

Finwall argues that his allegedly post-petition fee did not exceed the value of the post-petition services he provided. Finwall states that in addition to preparing Debtors for and

---

[26] *Id.* at 8-9.

[27] *Id.* at 8 (italics added).

[28] *Id.* at 3-5, 7-8.

representing Debtors at the § 341 meeting of creditors, he performed substantial post-petition services for Debtors; namely he:

> facilitated the closing of four civil cases in the 52-4 district court, arranged for the release of pending and active garnishments with 4 different creditors, ensured that the debtors' property be protected from a post-petition seizure order, and arranged with the State of Michigan Treasury Department for the release of the debtors' state tax refund, which the debtors gratefully received prior to their first meeting of creditors.[29]

Finwall alleges that he rendered approximately 2.91 hours of services post-petition, "including preparation and representation at the 341 Meeting" and that, as a result, he "held an unsatisfied post-petition claim from the time of the 341 Meeting on May 24th, 2012 and the time the debtors submitted their payment, which was on May 25, 2012."[30]

Finwall also alleges that he "extensively counseled" Debtors about their rights under the Bankruptcy Code, including their right to have all of their pre-petition debt, except for the types of debt enumerated in § 523(a), discharged in their Chapter 7 case, and that Debtors understood that all pre-petition debts were discharged and that there was a permanent bar to collection of that debt.[31] And Finwall reiterates that his collection of $450.00 of the $900.00 flat fee after the Debtors' petition was filed did not violate the automatic stay, or the discharge injunction because his claim for this amount arose after the commencement of the case.[32]

---

[29] *Id.* at 2.

[30] *Id.* at 8.

[31] *Id.* at 2.

[32] *Id.* at 7-8.

9

Finwall argues, in the alternative, relying on the *Mansfield* case, that even if the Court determines that his claim for $450.00 of the $900.00 flat fee arose pre-petition, the Court should not order disgorgement of this fee because (1) the Bankruptcy Code provides inadequate guidance on how a Chapter 7 debtor's attorney is to collect his fees; (2) § 329 reasonably can be construed as permitting collection of a portion of a Chapter 7 attorney's fee post-petition; (3) the law is unsettled on when a claim arises; (4) he acted with a good faith belief that he was complying with the Bankruptcy Code and Rules in structuring his Fee Agreement and collecting fees; (5) his fees were reasonable, especially given the time expended and the result obtained; and (6) Debtors are satisfied with his services.[33]

## II. Jurisdiction

This Court has subject matter jurisdiction over this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a)(E.D. Mich.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(O).

This proceeding also is "core" because it falls within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within either of these categories in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen (In re Trans-Industries, Inc.)*, 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," *see id.*, including the Bankruptcy Code provisions cited in this opinion. And this is a proceeding "arising in" a case under title 11,

---

[33] *See id.* at 9-12.

10

because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *See id.* at 27.

## III. Discussion

The Court rejects Finwall's central argument, that the $450.00 that the Debtors paid to Finwall post-petition was payment of a *post-petition* debt, not subject to the automatic stay and the discharge. To the contrary, this was a pre-petition, dischargeable debt.

The one and only written, signed fee agreement between Finwall and the Debtors, signed pre-petition on April 10, 2012,[34] draws no distinction between pre-petition services and post-petition services to be rendered, and does not in any way apportion the $900.00 flat fee (the "non-refundable minimum engagement fee") into a fee amount for pre-petition services and a fee amount for post-petition services. The Court agrees with those cases holding that this kind of pre-petition flat fee agreement in a Chapter 7 case creates a debt that is entirely a pre-petition debt, which therefore is subject to the automatic stay and is dischargeable in the Chapter 7 case. *See, e.g., Bethea v. Robert J. Adams & Assocs.*, 352 F.3d 1125, 1126-27, 1129 (7th Cir. 2003), *cert. denied*, 541 U.S. 1043 (2004); *In re Waldo*, 417 B.R. 854, 880-85 (Bankr. E.D. Tenn. 2009), *In re Lawson*, 437 B.R. 609, 614-15 (Bank. E.D. Tenn. 2010), and *In re Mansfield*, 394 B.R. 783, 785, 791 (Bankr. E.D. Pa. 2008); *In re Gourlay*, 483 B.R. 496, 500 (Bankr. E.D. Mich. 2012), aff'd, 496 B.R. 857 (E.D. Mich. 2013); *In re Abdel Hak*, No. 12-46329-MBM, 2012 WL 5874317 at *4-5 (Bankr. E.D. Mich. November 16, 2012). As the Court in *Mansfield* reasoned,

> When a client and an attorney agree that the attorney will provide certain services (described by a category, a time period, a case, etc.) for a fixed or flat fee, the fee covers the services regardless of

---

[34] A copy of this Fee Agreement is attached to the UST's Motion (Docket # 20).

the amount of time which the attorney spends performing the services; both the client and the attorney are obligated to the flat fee whether the attorney would have made more or less for the services by charging for them by the hour or charging separately for each service. *See* Black's Law Dictionary (8th ed.2004) (defining ''fixed fee'' as ''[a] flat charge for a service; a charge that does not vary with the amount of time or effort required to complete the services.''); *In re Fischer,* 2004 WL 555407, at *1 (Bankr.C.D.Ill.2004) **(''With a flat fee, it matters not when the work is performed, since, by definition, a flat fee is a debt that is created upon the execution of the fee agreement and its existence is not linked to the amount or timing of the legal services actually performed.''). Consequently, it is inconsistent with the nature of a flat or fixed fee arrangement, regardless of how the fee is paid (*e.g.,* whether the fee is paid in a lump sum, divided into installment payments, etc.) to apportion the fee among the services performed or the time periods within which they were performed.** *See Bethea v. Robert J. Adams & Associates, supra,* 352 F.3d at 1129 (reasoning that a flat fee retainer agreement cannot be divided into hourly units without contradicting or re-writing the agreement); . . .

**The Court finds the division of a flat fee arrangement into prepetition and postpetition parts to be conceptually inconsistent and therefore untenable. The Court therefore joins those other courts which hold that when a flat or fixed fee prepetition agreement is at issue, the fee must be paid in full prior to the commencement of the debtor's case or the fee is discharged under § 727(b).**

394 B.R. at 791 (emphasis added).

Under the written fee agreement in this case, the entire $900.00 was actually due to be paid before the filing of Debtors' petition. The agreement states:

> It is a condition predecent to this Agreement that all fees are paid in advance before the filing of the petition unless otherwise agreed upon between this office and client.[35]

---

[35] Fee Agreement at 1.

12

Finwall alleges that he and the Debtors did "otherwise agree," that $450.00 of the $900.00 fee could be paid after the filing of the bankruptcy petition. And, Finwall asserts, "the Debtors and Mr. Finwall had an orally expressed agreement that the $450.00 payment was exclusively for pre-petition services. The balance of $450.00 (which was paid the day after the 341 Meeting) only became due subsequent to Mr. Finwall's performance of post-petition services, which totaled approximately 2.91 hours, including preparation and representation at the 341 Meeting."[36]

Finwall tries to distinguish cases like the *Mansfield* and *Waldo* cases cited above. He argues that the fee agreements in *Mansfield and Waldo* are distinguishable from the fee agreement in this case, because the fee agreements in those cases did not condition the post-petition installment payments of the flat fee on the debtors' attorneys' actual performance of post-petition services.[37]

But contrary to Finwall's position, the written fee agreement in this case does *not* condition the post-petition installment payments of the flat fee on the debtors' attorneys' actual performance of post-petition services. And the alleged oral agreements between Finwall and the Debtors, described above, are void and unenforceable, because they do not comply with the material requirements of 11 U.S.C. § 528(a)(1). *See* 11 U.S.C. § 526(c)(1). As Debtors' attorney, Mr. Finwall is a "debt relief agency." *See* 11 U.S.C. § 101(12A); *Milavetz, Gallop & Milavetz v. United States*, 559 U.S. 229, 235-36 (2010). As such, Finwall was required by § 528(a)(1), *prior to the filing of Debtors' petition*, to "execute a written contract [with the Debtors] that explains conspicuously — (A) the services such agency will provide to such

---

[36] "Attorney for Debtors Response Brief" (Docket # 21) at 8.

[37] *Id.* at 5-6.

assisted person; and (B) the fees or charges for such services and the terms of payment." This means that no later than the petition date in this case, Finwall was required to have executed a written contract with the Debtors that contained the terms of the alleged oral agreements described above. But Finwall did not meet this requirement. Rather, the only written agreement executed between Finwall and the Debtors is the fee agreement described above, which does not, in itself, allow for payment of any part of the $900.00 flat fee after the petition date, and which does not apportion the $900.00 "non-refundable minimum engagement fee" between pre-petition services and post-petition services. By its terms, the written fee agreement required that the entire fee be paid before the filing of the petition. Thus, the alleged oral fee agreements, or oral modifications to the written fee agreement, that Finwall alleges do not comply with the material requirements of § 528(a)(1). As a result, any such oral agreements are "void and may not be enforced by any Federal or State court or by any other person, other than [the] assisted person." 11 U.S.C. § 526(c)(1).

It follows that on the petition date in this case, Debtors' attorney Finwall was a creditor of the Debtors, holding a pre-petition $450.00 claim that he was prohibited from trying to collect from the Debtors, due to the automatic stay of 11 U.S.C. § 362(a). And Finwall's claim would have been discharged by the Debtors' Chapter 7 bankruptcy discharge, under *Rittenhouse*, if Debtors had not paid that fee before their discharge was entered.

It is undisputed that Finwall did not advise the Debtors that the $450.00 fee balance that they owed Finwall was a debt that they were not obligated to pay, that was subject to the automatic stay, and that would be discharged in their bankruptcy case. Rather, the Debtors were made to believe, by the written fee agreement and by their attorney Finwall, that they were

14

obligated to pay the balance of the $450.00 flat fee after their bankruptcy case was filed. Under the circumstances, it is far from certain whether the Debtors would have chosen to pay that $450.00 balance of the flat fee, had they been properly advised by their attorney. The Debtors were free, of course, to *voluntarily* pay that fee, just as they could voluntarily pay any dischargeable or discharged debt that they wish to pay, for example, out of a sense of moral obligation. But here, there is no way to know if the Debtors would have chosen, on a truly voluntary basis, to pay this debt to Finwall.

The Court concludes that under the circumstances the appropriate remedy is to cancel the fee agreement between the Debtors and Finwall, to the extent of the Debtors' obligation to pay $450.00 of the $900.00 fee after the filing of this bankruptcy case. As a result, Mr. Finwall must repay the $450.00 to the Debtors.[38] *See, e.g., Bethea*, 352 F.3d at 1129.

The Court rejects Finwall's argument that disgorgement of the $450.00 should not be ordered because Finwall acted in a good faith belief that he was complying with the Bankruptcy Code and applicable rules, and because the law has been unsettled in this area. The Court does not question Finwall's good faith, or the sincerity of his belief at the time that he was complying with the Bankruptcy Code and applicable rules. But at the time this bankruptcy case was filed in 2012, the published case law was such that Finwall should have known that there was at least a serious question about the legality of his fee arrangement with the Debtors in this case. This is so because of the 2005 Sixth Circuit decision in *Rittenhouse*, and the fact that the decisions in the

---

[38] If the Debtors choose to turn around and pay that $450.00 back to Finwall, after receiving the refund from him and after Finwall has served each of the Debtors with a copy of this opinion and the Court's accompanying order, then the Debtors may do that, as their free choice. Nothing in this opinion or the Court's order will preclude that.

15

*Bethea*, *Waldo*, *Lawson*, and *Mansfield* cases were published in 2003, 2009, 2010, and 2008 respectively. And 11 U.S.C. §§ 526 and 528, discussed above, have been part of the Bankruptcy Code since 2005. Finally, the Supreme Court's decision in the *Milavetz* case, confirming that Debtors' attorney is a "debt relief agency," and therefore subject to the requirements of 11 U.S.C. §§ 526 and 528, was decided on March 8, 2010, more than two years before the petition was filed in this case on April 18, 2012.

Finwall's argument might have more appeal if the Court was now being asked to order disgorgement of fees by Finwall in a large number of cases. But the Court is not presently being asked to do that; the only such case before the Court is this one, and in this one case, at least, the disgorgement remedy is appropriate. *E.g., Bethea*, 352 F.3d at 1129.

## IV. Conclusion

For the reasons stated in this Opinion, the Court will enter an Order granting the UST's Motion, and ordering the relief described above.

**Signed on April 8, 2014**  /s/ **Thomas J. Tucker**
**Thomas J. Tucker**
**United States Bankruptcy Judge**